**WOELM v. HASSELQUIST.**
Patent Appeal No. 3038.

Court of Customs and Patent Appeals.
Jan. 3, 1933.

See, also, (Cust. & Pat. App.) 62 F.(2d) 367.

Warfield, Fraser & Brown, of New York City (Donald L. Brown, of New York City, of counsel), for appellant.

Cromwell, Greist & Warden, of Chicago, Ill. (Raymond L. Greist, of Chicago, Ill., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention to appellee.

The count in issue was taken from appellant's patent No. 1,700,246, issued January 29, 1929, on an application filed June 1, 1923. It reads: "2. In a step-by-step pencil mechanism, the combination of a plurality of reciprocable lead propelling grippers provided with jaws arranged for the reception of lead therebetween, means to reciprocate said grippers, and means to impart to said grippers a jaw-separating movement of definite extent at predetermined periods in the operation of the mechanism."

The invention in issue relates to mechanical pencils, so constructed that the lead contained therein is advanced step by step by reciprocable lead-propelling grippers provided with jaws, as described in the count.

In the operation of appellant's structure, the jaws, gripping the lead, are moved downwardly toward the point of the pencil, and, upon reaching a certain point, release the lead and return to their former position, where they again grip and hold the lead securely while the pencil is in use. The jaws remain in this position until the beginning of another operation.

In appellee's structure, the cycle of operation is reversed—the jaws, in gripping engagement with the lead at the lower limit of movement, are disengaged, move upwardly to the upper limit of movement, re-engage the lead, and move downwardly to their original position, where they hold the lead securely while the pencil is in use. They remain in this position until the beginning of another operation.

Appellant's structure is of the "push-cap type"; that is, it is operated by subjecting the cap at the upper end of the pencil to pressure, and then removing the pressure.

Appellee's structure is of the rotary type, that is, it is operated by: First, rotating the ferrule to the left, which causes the gripping jaws to release the lead and move upwardly to the upper limit of movement; and, second, rotating the ferrule to the right, which causes the jaws to grip the lead and move downwardly to the lower limit of movement.

Counsel for appellant moved to dissolve the interference on the ground that appellee had no right to make the claim constituting the count in issue. The motion was denied by the Law Examiner.

Due to the fact that the date alleged in appellant's preliminary statement for conception of the invention defined in the involved count was subsequent to the filing date of appellee, and as the Law Examiner had theretofore held that appellee could make the claim constituting the count in issue, the Examiner of Interferences awarded priority of invention to appellee. On appeal, the

Board of Appeals held that the involved count was sufficiently broad to read upon appellee's disclosure.

It is conceded by counsel for appellant that, if appellee is entitled to make the count in issue, he is entitled to an award of priority. It is contended, however, that appellee does not disclose in his application either "a plurality of reciprocal lead-propelling grippers," or "means to impart to said grippers a jaw-separating movement of definite extent at predetermined periods in the operation of the mechanism," within the meaning of the language of the count.

Relative to the first contention, counsel for appellant claims that appellant's structure consists, among other things, of two lead-propelling grippers "separable and distinct," and that the involved count is limited to such a structure.

It appears from the record that this question was not raised in appellant's motion to dissolve the interference, and was not discussed in the decision of the Law Examiner. Whether that issue was presented to the Board of Appeals does not appear from the record. It may be observed, however, that appellee discloses in his application a feed-finger unit, comprising a band of triangular cross-section and, formed integrally therewith, *three reciprocable resilient lead-engaging feed fingers* (lead-propelling grippers) provided with a plurality of jaws. The count in issue calls for a plurality of reciprocable lead-propelling grippers, and is not limited to a plurality of *separable* and *distinct* lead-propelling grippers, as disclosed in the specification of appellant's patent.

With reference to appellant's second contention, that appellee's application does not disclose means to impart to the lead-propelling grippers a jaw-separating movement of definite extent "at predetermined periods in the operation of the mechanism," it may be said that, if appellee's application did not disclose means to impart to the lead-propelling grippers a jaw-separating movement of definite extent, at predetermined periods in the operation of his structure, the mechanism could not be successfully operated, that is, the jaw-separating movement must be, and in our opinion is, definite and of sufficient extent to release the lead at predetermined periods. If, as argued by counsel for appellant, the engaging fingers in appellee's structure should, due to use and age, lose their resiliency and fail to perform their intended function—admittedly the same as that performed by the lead-propelling grippers of appellant's structure—age and wear will have merely taken their inevitable toll.

We are here concerned with the structure and operation, not the durability, of appellee's device.

In the operation of appellee's mechanism, the jaw-separating movement always takes place at the beginning of the lead-advancing operation; whereas, in the operation of appellant's structure, the jaw-separating movement takes place when the lead has been completely advanced. In that respect, the two devices are distinguishable. They are identical, however, in that the jaw-separating movement in each device is at the beginning of the rearward movement of the lead-propelling grippers. Accordingly, we are clearly of the opinion that, although the structures of the two devices are different, the count in issue is sufficiently broad to cover them. In view of the fact that the count is not limited to the precise structure disclosed in the specification of appellant's patent, appellant may not now insist that limitations be read into it for the purpose of avoiding the issue of priority. On the contrary, the count must be given the broadest interpretation which it will reasonably support. Field v. Stow, 49 F.(2d) 840, 18 C. C. P. A. 1437; Sweetland v. Cole, 53 F. (2d) 709, 19 C. C. P. A. 751.

We conclude, therefore, that the tribunals of the Patent Office reached the right conclusion. Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.